UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   JUDGE JONES

UNITED STATES OF AMERICA

    v.

GERARD J. FEDERICO

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Criminal No.

: **07 CRIM 1012**

: Violation: 18 U.S.C. § 371


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: NOV 0 1 2007

INFORMATION

The United States of America, acting through its attorneys, charges:

<u>CONSPIRACY</u>
(18 U.S.C. § 371)

1.     Gerard J. Federico ("Federico") is hereby made a defendant on the charge stated below.

I. <u>THE RELEVANT PARTIES AND ENTITIES</u>

During the period covered by this Information:

2.     Federico resided in the Bronx, New York. He operated seven unincorporated businesses that provided industrial cleaning and maintenance supplies.

3.     The New York City Department of Education and its predecessor, the Board of Education of the City of New York (collectively, "NYCDOE"), was the entity responsible for operating New York City's public school system, the largest in the United States.

4. Co-conspirators included a group of corrupt NYCDOE school custodians that purchased industrial cleaning and maintenance supplies ("the corrupt custodians"). The corrupt custodians received kickbacks as described in ¶¶ 15 and 16 below, and solicited bids and awarded contracts to provide industrial cleaning and maintenance supplies to NYCDOE schools.

5. CC-1 was the owner of three companies that sold, or purported to sell, industrial cleaning and maintenance supplies. Federico was an employee of one of CC-1's companies.

6. Whenever in this Information reference is made to any act, deed, or transaction of any corporation or entity, such allegation shall be deemed to mean that the corporation engaged in such act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

7. Various persons and firms, not made defendants herein, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

## II. BACKGROUND

8. NYCDOE employs custodians to oversee and manage the physical facilities at New York City public schools. NYCDOE custodians' duties and responsibilities include maintenance of the schools to which they are assigned, purchasing goods and

2

services necessary for such maintenance, approving invoices and paying vendors for such goods and services. Custodians receive funding from NYCDOE to carry out their duties and responsibilities, typically on a biweekly basis. Custodians must maintain a separate bank account and check book for NYCDOE funds allocated to them. They must also maintain certain books and records relating to each and every expenditure of NYCDOE funds and submit the requisite documentation to their plant manager. The Auditor General of the NYCDOE periodically conducts audits of custodians' books and records on file with the plant managers.

9. In approximately July 1999, custodians adopted NYCDOE's purchasing policy which required them to either purchase goods and services from a list of approved vendors or to solicit at least three competitive telephone bids before purchasing any items which, in the aggregate, totaled more than $250 and three competitive written bids before awarding any contract to provide items which, in the aggregate, totaled more than $5000. Prior to July 1999, NYCDOE custodians purchased goods and services from vendors of their choosing.

10. With respect to contracts for which competitive bids had been solicited, the NYCDOE required its employees, including custodians, to award the contract to the bidder who provided the "maximum quality for the minimum price."

11. NYCDOE also required its employees, including custodians, to prepare a bid summary for each contract awarded pursuant to competitive bidding. The bid

summary included, among other things, information regarding the companies from which bids were received. NYCDOE provided the necessary bid summary forms to be filled out by the custodians.

12. Industrial cleaning and maintenance supplies include any custodial or janitorial service, item, good, product, material, equipment, or mechanism.

### III. DESCRIPTION OF THE OFFENSE

13. From at least as early as 1997 and continuing until at least December 2003, the exact dates being unknown to the United States, in the Southern District of New York and elsewhere, the defendant and his co-conspirators, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States of America, to wit, to violate Title 18, United States Code, Sections 1341 and 1346, in violation of Title 18, United States Code, Section 371.

14. It was a part and object of the conspiracy that the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud NYCDOE, to obtain money and property from NYCDOE by means of false and fraudulent pretenses, representations, and promises, and to deprive NYCDOE of its intangible right to the honest services of its employees, unlawfully, willfully, and knowingly, for the purpose of executing such scheme and artifice, would and did place in post offices and authorized depositories for mail matter, matters and things to be sent and

delivered by the Postal Service, and deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and take and receive therefrom, such matters and things, and knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the place at which they were directed to be delivered by the persons to whom they were addressed such matters and things, in violation of Title 18, United States Code, Sections 1341 and 1346.

### IV. THE MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

15.   During all or some of the period between 1997 and December 2003, Federico paid kickbacks to the corrupt custodians to ensure that they would allocate contracts to his businesses and to CC-1's companies, and for the corrupt custodians' assistance in frustrating and subverting NYCDOE's competitive bidding policy for contracts for industrial cleaning and maintenance supplies by ensuring that the corrupt custodians would not invite potential competitors to bid on contracts for industrial cleaning and maintenance supplies awarded by NYCDOE schools. During all or some of the period between 1997 and December 2003, the corrupt custodians received kickbacks totaling approximately $80,000 from Federico in cash and goods and services. The bids the corrupt custodians obtained were from CC-1's companies, from businesses operated or purportedly represented by Federico, or attributed to other companies whose names

Federico supplied to the corrupt custodians. As a result of the foregoing, NYCDOE was deprived of its right to the honest services of the corrupt custodians.

16. Defendant and CC-1 generated money to be paid to the corrupt custodians through a fraudulent scheme whereby Federico and CC-1 caused schools where a corrupt custodian was employed, to issue false and fraudulent purchase orders to CC-1's companies. Subsequently, defendant and CC-1 caused CC-1's companies to issue corresponding false and fraudulent invoices which the corrupt custodians then paid from NYCDOE funds which they maintained. The purchase orders were false and fraudulent in that they purported to order industrial cleaning and maintenance supplies, all or part of which were not intended to be delivered. The invoices issued by CC-1's companies were false and fraudulent in that they billed for industrial cleaning and maintenance supplies delivered in part or never in fact delivered. The corrupt custodians falsely certified that NYCDOE schools had received all of the goods described in those invoices, and thereby caused NYCDOE to pay the full amount stated in them. In actuality, CC-1's companies provided only a portion or none of the industrial cleaning and maintenance supplies described in the purchase orders and invoices. The corrupt custodians were paid kickbacks from a portion of the proceeds of the scheme and Federico and CC-1 evenly split the remaining money.

17. At no time did the defendant or his co-conspirators disclose to NYCDOE the corrupt custodians' receipt of payments from Federico. All such payments were made

without the knowledge or approval of NYCDOE, and in violation of the corrupt custodians' duty of loyalty to NYCDOE.

## V. OVERT ACTS

18.  In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendant and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

(a) On numerous occasions, between approximately 1997 and December 2003, defendant and his co-conspirators caused NYCDOE schools to issue numerous false and fraudulent purchase orders to companies associated with CC-1. Some of these purchase orders were sent through the United States mails from schools located in the Southern District of New York;

(b) On numerous occasions, between approximately 1997 and December 2003, the defendant caused CC-1's companies to issue numerous false and fraudulent invoices corresponding to those purchase orders. Some of these invoices were sent through the United States mails to schools located in the Southern District of New York;

(c) On numerous occasions, between approximately 1997 and December 2003, the defendant caused NYCDOE funds to be paid to CC-1's companies in payment of the false and fraudulent invoices. Those funds were paid from bank accounts maintained at banks located in Manhattan.

(d) On numerous occasions between approximately 1997 and December 2003,

Federico, with CC-1's knowledge and approval, paid numerous kickbacks in the form of cash and goods and services to a group of corrupt NYCDOE school custodians.

IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 371.

Dated: October 26, 2007

_____
THOMAS O. BARNETT
Assistant Attorney General

_____
SCOTT D. HAMMOND
Deputy Assistant Attorney General

_____
MARC SIEGEL
Director of Criminal Enforcement
Antitrust Division
United States Department of Justice

_____
MICHAEL J. GARICA
United States Attorney
Southern District of New York

_____
RALPH T. GIORDANO
Chief, New York Office

_____
REBECCA MEIKLEJOHN

_____
MARY ANNE F. CARNIVAL
Attorneys, United States Department of Justice
Antitrust Division
26 Federal Plaza, Rm 3630
New York, New York 10278
(212) 264-0654